UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ROBERTA WEIL, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 4:19-cv-00260-JMS-DML |
| ) | |
| VICTORY OPERATING COMPANY, LLC D/B/A ) | |
| VICTORY CRUISE LINES, ) | |
| ) | |
| *Defendant.* ) | |

# **ORDER**

On May 22, 2019, Plaintiff Roberta Weil boarded the MS Victory I, a cruise ship operated by Defendant Victory Operating Company, LLC doing business as Victory Cruise Lines ("Victory"), with her daughter and son-in-law for a cruise around the Great Lakes region. When she checked into her cabin, she noticed that the mattress on the bed was very high and requested a step stool to assist her with getting into and out of the bed. The cabin steward provided an open, plastic crate, which the cabin steward placed next to the bed and covered with a towel. During the early morning hours of May 23, 2019, Ms. Weil attempted to get out of bed by stepping on the plastic crate, slipped, and sustained serious injuries including a broken neck. Ms. Weil initiated this litigation against Victory on December 3, 2019, asserting a negligence claim. [Filing No. 1.] Victory has filed an Amended Motion for Summary Judgment, [Filing No. 45], which is now ripe for the Court's decision.

1

# I.
## STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and

draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.   Upgrades to the MS Victory I Prior to Ms. Weil's Cruise

Prior to the beginning of the 2019 sailing season, new mattresses were installed onboard the MS Victory I. [Filing No. 45-1 at 5-6; Filing No. 45-2 at 6.] The new mattresses were part of an overall upgrade to the MS Victory I, which had recently been purchased by Victory. [Filing No. 45-3 at 6-10.] The new mattresses were approximately 13 inches high and were identical to mattresses used by many other cruise operators in the industry, including American Queen Steamboat Operating Company, LLC, which owns Victory. [Filing No. 45-6 at 4-5; Filing No. 45-6 at 26-27.] The mattresses were higher than the mattresses used previously on the MS Victory

3

I. [Filing No. 45-1 at 6.] The cruise on which Ms. Weil sailed was the first cruise of the 2019 sailing season for the MS Victory I. [Filing No. 55-3 at 12.]

### B. Ms. Weil's Medical Condition Prior to the Cruise

Over the course of the years leading up to her cruise on the MS Victory I, Ms. Weil had undergone several spinal surgical procedures, including a lower lumbar spine fusion in 2005, a multi-level lumbar fusion in 2011, and a cervical fusion procedure in 2017. [Filing No. 45-4 at 5-10.] As a result of those procedures, Ms. Weil walked in a flexed forward and off-center to the right position, which affected her gait and stability and caused her to trip and stumble on occasion. [Filing No. 45-4 at 7; Filing No. 45-4 at 32-35.] Because of her stability issues, Ms. Weil used a cane to assist with her balance. [Filing No. 45-4 at 34.] Ms. Weil also wore an orthotic device in her right shoe because her right leg is shorter than her left leg, and she has a congenital condition called "drop foot," which causes her right foot to bend in at the ankle. [Filing No. 45-4 at 17; Filing No. 45-4 at 24-25.] Additionally, Ms. Weil wore progressive glasses, and had received a new eyeglass prescription on May 6, 2019, two weeks before the cruise, but had not yet filled the prescription. [Filing No. 45-4 at 39-41; Filing No. 55-1 at 4.] Ms. Weil is far-sighted, and does not require glasses to use the bathroom. [Filing No. 55-1 at 5.] Although she uses a cane to walk, Ms. Weil was advised by a Victory reservation specialist that using a cane was not a bar to travel on the MS Victory I. [Filing No. 45-4 at 45.]

Ms. Weil did not disclose her prior surgeries or any other medical conditions on a form that Victory sent to passengers prior to the cruise, which Victory uses to determine whether a passenger has a mobility issue and needs a more accessible cabin. [Filing No. 45-6 at 17-18.] But, in response to a question on the form inquiring into any mobility issues or other health concerns

4

of which Victory should be aware, Ms. Weil stated that she walked with a cane. [Filing No. 45-4 at 48-49.]

### C. Ms. Weil Boards the MS Victory I and Requests a Step Stool

Ms. Weil boarded the MS Victory I on May 22, 2019 for a cruise around the Great Lakes region. [Filing No. 12 at 1.] Upon entering Cabin 214, her assigned cabin, Ms. Weil commented on the height of the bed to the cabin steward. [Filing No. 45-4 at 54-56.] The cabin steward was an employee of Cruise Management International ("CMI"), a company which employed all of the crew on the MS Victory I. [Filing No. 45-3 at 17-18.] Ms. Weil told the cabin steward that she needed assistance getting in and out of bed, and requested a step stool. [Filing No. 45-4 at 56-59; Filing No. 55-2 at 15-16; Filing No. 55-2 at 21.] The cabin steward provided a plastic crate "that [was] the kind that you see at banquets where they load up dishes," and that had "openings on the top and all four sides of the crate." [Filing No. 45-4 at 57-58.] After Ms. Weil explained that she could not stand on the crate because "it…seemed like [it had] egg crate openings and [was] not something you could put your foot on," the cabin steward placed a towel over the crate. [Filing No. 45-4 at 56-58.] Ms. Weil tried using the crate while the cabin steward was still present in her cabin, and she believed it was stable for her use in getting into and out of the bed. [Filing No. 45-4 at 58-59.] However, Ms. Weil again requested a step stool, but did not think the cabin steward understood her request. [Filing No. 45-4 at 59.]

### D. Ms. Weil's Fall

On the evening of May 22, 2019, Ms. Weil practiced getting on and off the bed using the crate prior to going to bed. [Filing No. 45-5 at 5.] At some point during the evening of May 22 or the early morning hours of May 23, Ms. Weil got out of bed to use the restroom and returned to bed without incident. [Filing No. 45-5 at 5.] In the early morning hours of May 23, at

approximately 4:00 a.m., Ms. Weil got up again to use the restroom and, while exiting the bed, her left foot slipped on the towel covering the crate, the crate moved forward and trapped her left foot between the cabin wall and the crate, and she fell and her head hit the nightstand. [Filing No. 45-4 at 62-65.] The impact of the fall broke Ms. Weil's neck by splitting a cervical vertebral body (C-2) in two, which required extensive surgery. [Filing No. 55-7.] At the time that she fell, Ms. Weil was not wearing her glasses, was not using her cane, and had not put on her orthotic device, which is fitted to a shoe. [Filing No. 45-4 at 61-62; Filing No. 45-4 at 66-69.] Ms. Weil had not turned on the light prior to her fall. [Filing No. 45-4 at 72.]

### E. Other Complaints Regarding the Mattress Height

Captain Gary Kerr, the captain of the MS Victory I during Ms. Weil's cruise, reported to the Vice President of Hotel Operations, David Kelly, that other passengers had complained regarding the height of the mattresses before departure on May 22, 2019. [Filing No. 55-3 at 44.] After Ms. Weil's fall, the Chief Executive Officer of Victory, John Waggoner, was advised by Mr. Kelly that the height of the beds was a problem for the guests of the MS Victory I. [Filing No. 55-3 at 29-30.] Also after Ms. Weil's fall, the legs of the beds onboard the MS Victory I were cut down by 3 inches at the direction of Victory. [Filing No. 55-2 at 6-8.]

### F. The Lawsuit

Ms. Weil initiated this litigation on December 3, 2019, [Filing No. 1], and filed the operative Third Amended Complaint on December 17, 2019, [Filing No. 12]. Ms. Weil asserts a negligence claim, and specifically alleges that Victory is liable for:

  a.  Negligent training of [its] agents and employees;

  b.  Negligent supervision of [its] agents and employees;

  c.  Negligently allowing passengers to use the Stateroom without first ensuring [Ms.] Weil could safely use the bed in a safe manner without injury;

6

    d.    Negligently fail[ing] to provide an adequate secure step or ladder or other similar means of egress from the bed(s) in Stateroom 214;

    e.    Failing to inspect the Stateroom of Plaintiff to insure it was supplied with a stable means of ingress and egress from the bed in the Stateroom;

    f.    Fail[ing] to provide a seaworthy vessel with equipment and crew;

    g.    Fail[ing] to provide a vessel fit for its intended purpose for a paying passenger;

    h.    Create[ing] and/or fail[ing] to eliminate hazards aboard the MS Victory 1; [and]

    i.    Performing other acts of negligence not yet known by Ms. Weil, but which will be ascertained during the discovery of this litigation.

[Filing No. 12 at 6-7.] Victory has now moved for summary judgment. [Filing No. 45.]

### III.
### DISCUSSION

**A.    Applicable Law**

At the outset, the Court must determine whether maritime law or Indiana law governs this case. Victory analyzes Ms. Weil's claim under maritime law, [*see* Filing No. 46 at 8 (Victory stating that "[i]t is well established that the general maritime law governs suits asserted by passengers against cruise lines")], while Ms. Weil applies maritime law to her claim, but argues in the alternative that her claim survives under Indiana law as well, [*see* Filing No. 56 at 7-13 (Ms. Weil arguing "Victory had a duty to Plaintiff under admiralty law," and that "[a]lternatively, Indiana law on comparative fault is applicable").]

The Court notes that Ms. Weil brings her lawsuit based on diversity jurisdiction, [Filing No. 12 at 1], but "[t]he fact that the case is before this court pursuant to diversity rather than admiralty jurisdiction…'does not preclude the application of maritime law,'" *Quirin v. Lorillard Tobacco Co.*, 17 F. Supp. 3d 760, 766-67 (N.D. Ill. 2014) (quoting *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir. 1988)). In order to determine whether maritime law applies, the Court

must decide whether the facts of the case "satisfy conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). Specifically:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

*Id.* (quotations and citations omitted).

As for the location test, Ms. Weil's fall indisputably occurred while the MS Victory I was sailing on navigable waters. Accordingly, the location test is satisfied. In considering the connection test, the Court looks first to whether Ms. Weil's fall has a potentially disruptive impact on maritime commerce and "assess[es] the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." *Sisson v. Ruby*, 497 U.S. 358, 363 (1990). The incident – falling while getting out of bed in a cabin on a cruise ship – affects the ability to travel safely on that ship. Second, the Court considers whether the general character of Ms. Weil's activity – traveling on a cruise through the Great Lakes – has a substantial relationship to traditional maritime activity. *Grubart, Inc.*, 513 U.S. at 534. The Court finds that traveling on a cruise is a traditional maritime activity, and that the connection test is satisfied. *See Brady v. Carnival Corp.*, 2020 WL 8836063, at *2 (S.D. Fla. 2020) ("General maritime law is applicable to this claim, as it involves alleged negligence committed aboard a cruise ship on navigable waters"). Accordingly, the Court applies maritime law to Ms. Weil's negligence claim.[1]

---

[1] Additionally, Ms. Weil's passenger ticket provided that "[a]ll questions arising on this Ticket Contract shall be decided according to the statutory and general maritime laws of the United States of America, with references to which this Ticket Contract is made." [Filing No. 60-3 at 17.]

8

It does not appear that the Seventh Circuit Court of Appeals has considered a negligence claim under maritime law in a context similar to the one presented by this case. For that reason, the Court looks to other circuit and district courts for guidance. "The elements of a negligence action under maritime law are 'essentially the same as land based negligence under the common law.'" *Quirin*, 17 F. Supp. 3d at 767-68 (quoting *Pearce v. United States*, 261 F.3d 643, 647 (6th Cir. 2001)). In order to prevail on a negligence claim under maritime law, a plaintiff must establish that: "(1) defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019).

"A duty of care under maritime law may encompass a failure to warn the plaintiff of harm that is reasonably foreseeable; the duty depends on the defendant's knowledge of the risk." *Quirin*, 17 F. Supp. 3d at 768. To establish that a ship owner has breached its duty of care, a plaintiff must show that: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, 2013 WL 11261341, at *4 (S.D. Fla. 2010) (citations omitted). "[U]nder federal maritime law, an operator of a cruise ship has a duty to warn of known dangers that are not open and obvious." *Frasca v. NCL (Bah.), Ltd.*, 654 Fed. App'x 949, 952 (11th Cir. 2016); *see also Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 954 (9th Cir. 2011) ("Because Holland American had neither actual nor constructive notice of a dangerous condition on the Pacific Ocean side of Lover's Beach, it had no duty to warn Samuels about swimming there. For this reason, we have no need to address

9

whether the possible dangers of swimming at that location were open and obvious"). So, in order for Victory to have had a duty to warn Ms. Weil of the danger posed by the high mattress and/or the crate, Victory would have to have been on notice of the danger, and the danger would have to have not been open and obvious.

### B. Merits of Ms. Weil's Claim

Because courts "need not even reach the defendant's actual or constructive notice of a risk-creating condition if they determine that condition was an open and obvious danger," *Smith v. Royal Caribbean Cruises, Ltd.*, 620 Fed. App'x 727, 730 (11th Cir. 2015), the Court first considers whether the danger the high mattress and crate presented was open and obvious.

#### 1. *Whether the Danger Was Open and Obvious*

In support of its Amended Motion for Summary Judgment, Victory contends that, in the maritime context, it only had a duty to warn Ms. Weil of known dangers which are not apparent and obvious, and the relevant inquiry is "whether a reasonable person would have observed the dangerous condition and appreciated the associated danger." [Filing No. 46 at 9.] Victory argues that "[i]t is undisputed that Ms. Weil was aware of the conditions of both the bed in her cabin and the platform provided to her," pointing to Ms. Weil mentioning the height of the bed to the cabin steward, the cabin steward providing the crate, Ms. Weil testing and using the crate before her fall, and her medical history. [Filing No. 46 at 11-12.] It asserts that Ms. Weil "cannot dispute that the conditions were open and obvious, based on her comments about the height of the bed, her request for the [crate], and her use of the [crate] to get in and out of bed on multiple occasions." [Filing No. 46 at 12.] It notes that Ms. Weil's subjective perception is irrelevant in any event, and that "a reasonable person with Ms. Weil's medical history would perceive any potential risk with using the [crate] provided to her and would have exercised appropriate caution." [Filing No. 46 at 12.]

10

Ms. Weil argues in her response that the elements of a negligence claim under maritime law are the same as those for a negligence claim under state law: duty, breach of duty, proximate cause, and damages. [Filing No. 56 at 8-9.] She asserts that even if a danger is open and obvious, Victory may still be liable for maintaining a dangerous condition. [Filing No. 56 at 8-9.] Ms. Weil argues that Victory created a hazardous condition by adding a thicker mattress to the original bed frame and "attempt[ing] to compensate for the problem with the improvised 'step' it provided." [Filing No. 56 at 9.] Ms. Weil points to her expert witness, Randall Jacques, who concluded that providing the crate was not a reasonable accommodation for Ms. Weil's safety needs. [Filing No. 56 at 10.] She notes that her medical history may go to comparative fault, but "does not give Victory an 'out' from the underlying duty." [Filing No. 56 at 10.]

In its reply, Victory argues that courts within the Seventh Circuit have granted summary judgment on negligence claims based on the open and obvious nature of a danger on a premises or a danger associated with a product. [Filing No. 61 at 4-5.] Victory asserts that although the Seventh Circuit has not directly addressed whether the open and obvious nature of a danger precludes a negligence claim in the maritime context, at least one district court within the Seventh Circuit has done so in the context of a state law negligence claim outside of the maritime context, and has granted summary judgment for the defendant when a danger was open and obvious. [Filing No. 61 at 5-6.]

Whether a danger is open and obvious depends upon "whether a reasonable person would have observed the condition and appreciated the nature of the condition." *Aponte v. Royal Caribbean Cruise Lines, Ltd.*, 739 Fed. App'x 531, 537 (11th Cir. 2018); *see also Horne v. Carnival Corp.*, 741 Fed. App'x 607, 609 (11th Cir. 2018) ("In determining whether a risk is open

11

and obvious, we focus on what an objectively reasonable person would observe and do not take into account the plaintiff's subjective perceptions") (quotation and citation omitted).

Victory emphasizes that Ms. Weil immediately noticed that the bed was too high, and asked for a step stool that she could use to get in and out of the bed. But, even though Ms. Weil recognized that the bed was too high, she then explained to the cabin steward when he brought the crate that it needed to be covered with something because it had holes in it, the cabin steward covered the crate with a towel, and Ms. Weil tested out the covered crate and determined that "[i]t seemed stable and it served the purpose." [Filing No. 45-4 at 58-59.] The Court cannot conclude as a matter of law that a reasonable person would have recognized the high bed and/or the crate as open and obvious dangers, given that the crate was provided, was covered with a towel to provide some stability, and was only used after it was successfully tested. [2]

        2. *Whether Victory Was on Notice of the Danger*

In support of its Amended Motion for Summary Judgment, Victory argues that even if the danger was not open and obvious, Ms. Weil has not shown that Victory had actual or constructive notice of the danger. [Filing No. 46 at 12-15.] Victory contends that it did not have any issues

---

[2] Ms. Weil argues that even if the danger was not open and obvious, Victory can still be liable under a comparative fault analysis. [Filing No. 56 at 8-10.] Ms. Weil relies upon *Carroll v. Carnival Corp.*, 955 F.3d 1260 (11th Cir. 2020), in which the court stated that the "open and obvious nature of a dangerous condition negates liability for failure to warn," but then stated that "even if the risk was open and obvious, that does not preclude [a] negligent maintenance claim." *Id.* at 1267-69. While Ms. Weil alleges that Victory was negligent for failing to warn her of the dangers posed by the high bed and the crate, [*see, e.g.*, Filing No. 12 at 5-6 ("Defendant failed to…warn those onboard the MS Victory 1… of the hidden dangers….")], she also appears to allege claims more akin to a negligent maintenance claim, [*see, e.g.*, Filing No. 12 at 7 (alleging that Victory "create[ed] and/or fail[ed] to eliminate hazards aboard the MS Victory 1").] In any event, for purposes of the pending motion, this distinction does not affect the Court's analysis and the end-result is the same: there is a genuine issue of material fact regarding whether the dangers posed by the high bed and crate were open and obvious and, accordingly, summary judgment is not warranted.

12

with the mattresses before the May 22, 2019 cruise, that the mattresses were comparable to mattresses used by other cruise operators, that it did not have notice of Ms. Weil's medical history and mobility issues, and that the cabin steward who supplied the crate was an employee of CMI and not Victory. [Filing No. 46 at 12-134.]

Ms. Weil responds that evidence of corrective action can show that a party had notice of a dangerous and defective condition, and points to the fact that Victory knew of passenger complaints regarding the height of the beds before setting sail on May 22, 2019 and began cutting down the bed frames shortly thereafter. [Filing No. 56 at 10-11.]

In its reply, Victory argues that Ms. Weil's injury occurred approximately twelve hours after she boarded the MS Victory I, and that the only notice Victory had of issues with the beds was when "a couple of passengers commented that the beds were slightly higher than they would expect" in the hours between passengers boarding and Ms. Weil's fall. [Filing No. 61 at 9.] Victory also notes that its modification of the bed frames by cutting them down took place after Ms. Weil's fall, so does not indicate that it had knowledge of issues before her fall. [Filing No. 61 at 10.]

To establish that Victory had notice of the dangerous condition of the bed and the crate, "it is not enough to demonstrate merely that the defendant negligently created or maintained its premises." *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1303 (11th Cir. 2020) (quotation and citation omitted). Instead, Ms. Weil must show that Victory "in fact knew or should have known that a particular hazard existed." *Id.* Actual notice means that Victory actually knew of the unsafe condition, while constructive notice can be shown "with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures,'" or "with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Guevara*, 920 F.3d at 720 (quoting

13

*Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988) and *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)).

The following excerpt from Mr. Kelly's deposition indicates that there is at least a genuine issue of material fact regarding whether Victory knew that the high beds created an unsafe condition:

> Q: And do you know what the height of the bed frame on Victor I was before the sailing?
>
> A: It would have been 19 inches.
>
> Q: And how do you know that?
>
> A: Because I'm familiar with the fact that that week we started to modify the bed frames because there had been some comments from passengers about the height of the bed.
>
> Q: And then did someone call you in New Albany, Indiana, and say there was some comments by passengers about the heighth of the bed?
>
> A: Well, there was a phone call from, I believe, the captain of the vessel that week just to indicate there would have been a couple passengers made comments that they felt the beds were slightly higher than they would expect, and did I have any suggestions on how we could help resolve that problem.

[Filing No. 55-3 at 14.] Mr. Kelly also testified as follows:

> Q: Okay. Prior to that time, did you have any notice of any issue with the mattress heights prior to that May 22nd, early morning May 23rd incident?
>
> A: Yeah. I mean, before the departure is when, I believe, Captain Gary called and saying guests have embarked. Embarkation went well. Guests have been to their cabins and unpacked bags. And that's when he started to see some comments about the beds being a bit higher than what we expected.

[Filing No. 55-3 at 44.]

From this testimony, a reasonable jury could conclude that Victory had received complaints regarding the height of the mattresses prior to Ms. Weil's fall, and that the complaints were enough to put Victory on notice of the dangers that the mattress height posed.[3]

As to whether Victory was on notice of the danger posed by the crate, Victory argues that the cabin steward was an employee of CMI, and not Victory. But simply stating that the cabin steward was not a Victory employee does not address whether the cabin steward could still be considered an agent of Victory such that notice to him constituted notice to Victory. The Court will not find as a matter of law that Victory did not have notice of the dangerous nature of the crate based on Victory's undeveloped argument.

In sum, the Court finds that genuine issues of material fact exist regarding whether the dangers posed by the high mattress and the crate were open and obvious, and regarding whether Victory had either actual or constructive notice of those dangers. Accordingly, the Court **DENIES** Victory's Amended Motion for Summary Judgment. [[Filing No. 45](#).]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Victory's Amended Motion for Summary Judgment, [45]. The Court requests that the Magistrate Judge confer with the parties as soon as practicable regarding resolution of this matter short of trial.

Date: 4/23/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[3] Victory argues that any notice it received via complaints from other passengers occurred just "hours" before Ms. Weil's fall, citing to Mr. Kelly's deposition testimony. But Mr. Kelly did not provide a timeline for these complaints, and the Court will not draw inferences from his testimony that favor Victory – the moving party. And, in any event, the jury must determine whether the notice – and the timeframe in which Victory received notice – was enough to make Victory aware of a potential danger and enough to impose liability.

**Distribution via ECF only to all counsel of record**